The first case for argument this afternoon is 17-2503, In Re Tropp or Tropp? Tropp, Mr. Tropp. Tropp. Okay. Good morning, Mr. Hughes. Good afternoon, Mr. Hughes. Good afternoon. Thank you, Your Honor, and may it please the Court, Paul Hughes, David Tropp. Fundamental administrative law principles from Chenery on obligating an agency to defend based on the reasons the agency actually gave. Here, the Board evaluated the wrong specification. That requires reversal. The Court should not allow the PTO to advance arguments that the Board never made. May I ask you a question? On page 18 of your brief, you say the Board made no factual findings regarding the 233 application? That's right, Your Honor, and we're focusing specifically on the material. My point is that I didn't think that statement was true. As I read the Board, do you have adopted the examiner's findings on that topic? Well, Your Honor, I don't think the examiner reached... Didn't the examiner's findings on page 3 to 6 of its answer expressly address the 233 application? Your Honor, a few things about... Yes or no? Yes, it did. So how can you say that the Board made no factual findings when they adopted the findings regarding the 233 application? So, Your Honor, I have three responses on the adoption point. The first two are the way in which the Board must adopt if it wishes to adopt other material that come from ICON Health and otherwise, and then the third is about what the examiner actually did. So as to the first two points, for the Board to actually adopt in accord with this Court's precedent must do two things. It must specify the specific argument, not just a page range, but the specific argument it's adopting, and second, it must say why it finds that argument persuasive. Here, the Board did neither of those things. It just block-cited four full pages without adopting any of that analysis. Didn't find them persuasive. Sorry, Your Honor? Didn't find them persuasive. I mean, it reached the same result as the examiner. Well, Your Honor, it didn't explain what it was adopting of those four pages or any of the several different arguments, why it found any of those particular arguments persuasive. But even if the Court were to think that that... You would agree that your statement on page 18 is inaccurate, correct? I apologize, Your Honor. If that's how the Court views it, I'm sorry. What was the purpose of that sentence in that paragraph on page 18? What was that supposed to make me think? Your Honor, what we're trying to convey in that... What was it trying to make me think when you said they made no factual findings when, in fact, they made factual findings? Well, Your Honor, I think what we're trying to explain is that at footnote 2 of the Board's decision, this is at appendix page 6, the Board cited what we think is a very important passage in the 233 application, and that's the new material that was not in the grandparent in the 500 application. But you had tried to rely on the grandfather application. Right? We had made both arguments, Your Honor. We had made first that we would prefer priority to the grandfather application. So you tried to have the Board rely on the grandfather for written description. Well, we made both arguments. But because there was new matter in the father application, the Board said you can't rely on the grandfather. That's what footnote 2 said. Well, Your Honor, we made both arguments. Isn't that what footnote 2 said? Your Honor, it does say that we can... Yes or no? I'm sorry, Your Honor. Didn't you hear my question? I apologize if the court could repeat it. Well, I was just trying to set up the footnote 2. It seemed to me that it was clear to me that your argument to the examiner and to the Board was that you were entitled to rely on the grandfather for written description. Weren't you? We made two independent arguments. And you made that argument, correct? We did make that argument. Now, you would be entitled to rely on the grandfather were not there an intervening application in which there was new matter. Correct? We made two separate arguments. We said we would get priority to the grandfather because there was sufficient written description of the grandfather. And footnote 2 tells you you can't do that. Well, the... Isn't that what footnote 2 says? Well, no. I think footnote 2 says something different. Footnote 2 says we made an alternative argument that if the Board disagreed that we did not get priority to the 500 application, in the alternative that the 233, which is the same as the 531, the parent, had sufficient written description. And we relied... Okay, so that's what footnote 2 dealt with, right? So what's the problem with footnote 2? Well, because footnote 2 looks at the new matter that was added in 531 and says that this was part of the new matter and the continuation in part. Is that true? Yes, Your Honor. Was it part of the new matter? Yes, Your Honor. So that statement is a statement of fact. But, Your Honor, this is the only place in the Board's decision where it addresses this passage of the specification, which is very important to the subset limitation. Well, it sets it out in your argument on page 5 of the Board opinion and Appendix 6. Yes, and the Board... They say the appellant argues that this phrase makes all the difference in the world. And they say we disagree with the appellant. And then they say our review of the current specification, which includes that language, right? And, Your Honor, they think... Shows no description. So I was having a hard time understanding what you were trying to make out of the footnote. Your Honor, what I'm trying to make out of the footnote... In terms of a reversible error committed by the Board. Your Honor, what I'm trying to make of the footnote is it says in the footnote, it suggests, I think, the subtext of the footnote is quite clear, is that the application 531 does describe, and it goes on to cite this language, and then it discounts the relevance of that, saying it's part of the new matter. It never, in the Board decision, addresses whether or not that passage is part of written description to provide a sufficient basis. And we believe the passage does, on its face, with the context of the patent, provide written description. And there's nothing in the Board's decision that responds to that. No, the Board's reversible error was that it didn't say that the specification of the father and the 233 are the same. Well, it never... That's a missing sentence. If they put that sentence in, you would not have an argument, right? Well, two things, Your Honor. We have lots of arguments on the subject. Would you be making this argument if that sentence had been in the opinion? Yes, we would, Your Honor, because the Board... How would you be able to make that argument? Because then it would be clear that the Board looked at the 233. Because it never looked at the passage on which appellant before the Board relied and said, this is the critical passage of the new matter. If you're just going to look to the parent, this is the passage you need to look to. The Board cited this passage and gave a reason to discount it. It never actually explained, as a substantive matter, what it made of it. It didn't explain why it agreed with the examiner's rejection of that passage as being material. Yes, Your Honor. There's no discussion anywhere in the Board's opinion. So if the Board decision had said two things, one, I'm just trying to think what happens if it goes back, what the Board has to do. Yes, Your Honor. They have to say, oh, in case you thought we didn't know what we were doing, the specification of the parent and the 233 are the same. And we were aware of the one sentence in the parent application that you rely on for written description, which the examiner talked about in detail. And we once again adopt the examiner's findings of fact and conclusion. Your Honor, I would challenge... He's trying to figure out what, if we send it back and use the taxpayer's money plus client's money to clean up the opinion, what the Board has to write. Well, Your Honor, perhaps I should turn to the merits of that argument because the examiner did provide a sentence, but it didn't provide any reasoning. And we think that this passage, quite clearly, if the court disagrees with us on the procedural argument, then the substantive argument about the written description is before the court. And we think there are two independent reasons on the substance why there's sufficient written description. The first comes from precisely this passage, the multiplicity of subtypes. But just to Judge Clevenger's point, the examiner's analysis does talk about this provision. In one sentence, yes, Your Honor. In a very brief portion, and we think the examiner is flatly wrong about that. We're only looking at, really, a total of two and a half pages. Are we talking about 349 of the appendix? It says, appellant's disclosure. Isn't this getting to the sentence you're talking about? I'm sorry, Your Honor, you said you're at appendix page 349? Yes, Your Honor, it's at appendix page 349. And it says, appellant's disclosure simply states, many special types of lock having multiplicity of subtypes. And this does not lead one skill in the art to understand this means different combinations. That's what the board says. And we think that's just plainly wrong. And the reason that that's wrong is just the context of the patent. Okay, can we get to substantive? Tell me what a set is in English. Yes, Your Honor. Say, for example, a picture is worth a thousand words. If you had to draw a picture of a set, what would it look like? So, Your Honor, the set are all of the locks that the master key operates with. What's the set look like? The set would be a multiplicity of several locks, and then there are different subsets within the locks. So it's every lock in the universe of this type that uses this TSA special lock? The set requires that there are multiple locks that correspond to the master key. So multiple means at least more than one, or at least four if you talk about the subsets. You need two subsets, and each of these need at least two. Yes, Your Honor. So how many locks are we talking about, minimum number? Well, there would have to be at least one lock in each subset, or at least two subsets. So the minimum number would be two. So any lock? Each subset has to have two locks. We've not looked at claim construction on that, I suppose. Well, I mean, you can read the claim, can't you? Sorry? You can read the claim. The claim says a set is comprised of two or more subsets, and a subset is comprised of two or more locks. So, yes, Your Honor, there could be two locks in each subset. And before. Yes, Your Honor. So it's just any four locks. Say, for example, if you had one lock in Tennessee and one lock in Missouri and one in California and one in Arizona, that would be a set. That would be a set if they all work on the same master key. So that's a set. Yes, Your Honor. So there's obviously, if more than four has been produced, there are a million sets out there in the universe. They may be operated by different people. Are you talking about how something is sold or how something is used? Because if it's how something is used, if I happen to use three locks on one piece or two pieces of luggage, that I'm not infringing, but if I use four, then I am. That's a user, right? Yes, Your Honor. So those would go to infringement questions. I think the way this would work is both from the manufacturing side, when a set is manufactured, when the manufacturer makes multiple locks that have the different user operating interface. No, not multiple. So I'm a manufacturer, and as long as I'm a manufacturer that's subject to infringement under your patent because I've produced more than four locks, or at least four locks. If they're within the multiple subsets and then they all use the same master key. What does that mean, within the multiple subsets? So that's the requirement of the patent, Your Honor, that there is one indicia that is common to all of these locks. That indicia corresponds to a single master key, and then within the set there are multiple subsets, and those are differentiated based on the kind of the user operated lock interface. That there must be two or more different kinds of user operated lock interfaces that have the same indicia with the same master key. So if you're a producer and you've produced your small guy in your garage, and you've made five of these, you're infringing because it's a set. And everything that small and everything to the north of that is an infringing set. If I'm a user, like if somebody else in my family has one piece of luggage and they've got three and I've got three of mine, so together do we infringe because together we've got a set? Your Honor, that would be an infringement question that, again, I'm not exactly sure how that would come up, but I don't think to the point of the written description. Because the written description is, is there anyone who has the specification know that the inventor possessed the notion of having one master key that operates multiple locks based on the same indicia that have different user interfaces? And we think there are just two different reasons why that's the case. The one comes from this language about any special lock of any type, and then the disclosure is that the most prominent distinctions in the patent are the different kinds of the user lock interfaces. The second comes later, page 25 of the appendix of the specification, where it describes that there's a single indicia that's tied to a single master key. And then towards the bottom of page 25 explains that the same indicia is on each of the different embodiments of the different locks. Can I ask you, what if you wrote a claim that just said a lock that does this? A lock for securing, not a set of locks, a lock for securing travelers' luggage that has this master key and some combination thing in it? That would just, that would get you the same place, right? Because every one use of it. I think that is an arguable way, yes, Your Honor, to get the same place. And I know that there are other patents in this family that don't have the same concept of the set that are written as Your Honor would suggest along those lines. The other two patents are method claims, correct? Well, yes, and there are some method claims in this patent. Your Honor, if I may reserve the… Well, we have, if we have some more questions. I just, I mean, to me, you understand that in order to prevail on the written description issue, you have to find a hook, find something in the specification to which you're looking and you know which one you're looking at. It's either the father or this one. Yes, sir. And you have to have the hook. And the language that I understand you provides the hook is the particular language that was new, any special type of log is intended to include special logs having, right? Well, Your Honor, I believe that… That is the hook, correct? There are two, our argument is there are two separate hooks. One is the new language that you just described. So yes, Your Honor, there's a separate hook that is in the grandparent. We make both of those two arguments. In the grandparent? Yes, Your Honor. So we have two separate hooks. But you're not entitled to the grandparent. Sorry? The grandparent? We have one hook that's in the grandparent and that's contained and a separate hook that's… But if it's in the grandparent, you're not entitled to that because of priority. Parent or grandparent? I'm sorry. Well, we argue there are two hooks, one in the grandparent and one in the parent. Right. So are you entitled to rely on a hook that's in the grandparent? Yes, Your Honor. Why? Because, well, it's… This is a continuation and part of that grandparent. So that same material is also in this specification and it's continued throughout. So if we were to prevail that that is a sufficient hook, as Your Honor put it, then we would have priority to the grandparent. If the court were to disagree with us on that hook to the grandparent and thought we were right about the hook in the parent, then we recognize that that would be priority to the parent application instead. Why is it that the phrase, the new matter in the parent, describes a set… Why does the language, a special type of lock is included, locks having subtypes in different sizes, different designs, etc.? What does that tell me about a set? So, Your Honor, I think our argument proceeds in three pieces here. The first piece is a few sentences up. It begins at the third line of this paragraph on page 22. It describes a master key that can open the master lock portion of any special lock of this type. Now, a master key is a master key because it opens multiple locks. Master keys only exist in the context of a set of locks. You can't have a master key with one lock, then it's just a key. It's not a master key. So for it to be a master key, there must be a set. That's what the top of that portion of that page tells us. Then we drop to this material, which is the critical new material. It describes what is it about this set, and that's what this phrase tells us. The phrase, any lock of this type, is intended to include special locks, in the plural, having a multiplicity of subtypes, such as different sizes, different manufacturing designs, or styles. The third part of our argument is when one understands what the patent is conveying about different manufacturing designs or styles, the most prominent discussion of the patent of different designs or styles are about the different user-operated locking mechanisms. That comes from the figures, which the figures distinguish themselves based on the user locking mechanism, as well as from disclosures at page 24 and 26 of the appendix that talk about locks based on the difference, for example, the different number of dials or using a spin dial. So those together, Your Honor, in the parent application is precisely why one skilled in the art reading this would understand that this conveys the notion of a set that has the... A set with subsets? Yes, Your Honor, that has the subsets, because again, it's using multiplicities. What does it teach you, the fact that you have a master key, teach you about a subset? Well, this language, instead of using the word subset, uses the multiplicity of subtypes, and I think subtype and subset, they are conveying the same concept. It doesn't have to be a verbatim use of subset. Well, except that you have to read subtypes in connection with its, where you find it where they're talking about different design styles, sizes, types. And that's what a subset, I believe, Your Honor, reasonably conveys. So you appreciate that the issue you bring to us is a question of fact, and you appreciate that the subsidiary findings of fact are going to be measured on the substantial evidence test? Your Honor, we do in our brief, of course, we suggest that the court, we understand there are controls, and it's a question of fact, although we do suggest that it would be more consistent. But if the word type can't be synonymous with set, then your argument is undermined. Well, Your Honor, I think – Couldn't reasonable people disagree with what the word types means in the sentence where it's found in the father specification? Well, again, Your Honor, I do think the better way to look at this is this would be a legal question, like claim construction, like indefinite, something else. Well, even if it wasn't a legal question, shouldn't your response to Judge Clevenger be that it is a factual question, sir, but it's one the PTO didn't take up as evidenced by the footnote, and that this court, as an appellate court, is not best situated to decide that factual question in the first instance. So rather than try and tell them it's a legal question, wouldn't you rather just adopt the argument I made for you? Yes, Your Honor. All right. That's a better argument. Thank you. There is a second separate hook in the grandparent that I'd be happy to describe if the court wishes, or as Judge Moore just mentioned, I think that's precisely the argument that we make as to why the board never made this factual finding that we think is critical.  May it please the court. I'd first like to address the point about the board's decision, and if the board did address the correct specification. There's evidence that the board addressed the proper specification in at least a couple of ways. One, the board did adopt the examiner's rejection, and the board adopted the examiner's finding with respect to the 223 application. Under the board rules, 41.50A1, when the board adopts the examiner's rejection, the board is adopting all of the examiner's findings. I would also point us to the board. So you reject your adversary's argument that it isn't enough just to say we adopt, you have to say specifically what you adopt? I do reject that. That is in the case of an IPR where you're talking about the case that he cites here, the Outdoor case, is an IPR which is talking about petitioners competing, and that language is not, there's no board rule regarding this. This is ex parte prosecution, and this is all PTO findings, so I do not think that that applies in this case. Also, if we look. You said, what does that rule say, the 41 point whatever rule that you read? Sorry, let me call it up here. It says that the board in its decision may affirm or reverse the decision of the examiner in whole or in part on the grounds and on the claims specified the examiner. The affirmance of the rejection of a claim on the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, except to any grounds specifically reversed. So here the board, I believe also in the findings of fact, the pages three to six of the answer did address this anyway, but the board specifically adopted that 112 finding. So the additional place, I think as Judge Clevenger had mentioned, where the board specifically responds to appellant's argument and specifically on page APPX6 in this block quote, they say that appellant argues and that site, page six, lines 22 to 23, is that new matter that was added in the CIP, and so the board looked at that language and said that they disagree with the appellant, that that language supports written description. Where do they say that? On APPX7, so after they block quote we say we disagree with the appellant. Yeah, but there's no analysis here, right? You agree with that? Well, then they launch into the analysis. Okay, so let's look into the analysis. And then in the analysis on seven and eight, they say our review of the present specification as well as the prior filed. But that's exactly the sentence that the footnotes attach to, which is what causes a lot of confusion in this case. I mean, if that stupid footnote weren't there, we wouldn't be here today most likely. But the board chose to write a confusing opinion. So who do we hold that against? I agree that the board, I think if we look at kind of what happened with the case, maybe we can shed a little bit more light on why the board wrote that. I mean, the board, that footnote doesn't say that we are not considering this material. And I think, again, if we look at eight. And you don't think that it would be a fair inference for me to read the opinion that way? You don't think that I can at all fairly or reasonably read footnote two as a statement by the board that we're not going to consider any special lock of this type language because there's no priority in its new matter? You don't think that's even a possibly reasonable interpretation of this board opinion? I don't in looking at the context of the opinion because, again, on APPX 8, they say nowhere in the present specification is the word subset used. They say none of the appellant's available specifications. But the sentence says, our review of the present specification as well as the prior file shows no description of a set of locks. And there's a footnote right in the middle of that. Our review of the present and the prior. And then when you drop down to the footnote, the footnote says, any special lock of this type language isn't relevant because it's new matter. It doesn't say that it's not relevant. We find this description constitutes at least part of the added new matter of the continuation part application. That's in the sentence. That's the footnote in the middle, not even at the end, in the middle of the sentence saying our review of the present specification shows no description of this. Then there are drops to a footnote that says, we find this description, the any special lock language, is new matter. Right. But I think, again, if we look at the context of what was happening here, there was a priority analysis. There was the prosecution history included a lot of discussion about which SPAC supported this. You know, there was a 103. But here's the problem. I mean, I've got the appellant's brief below in front of me, right? Page 77 through 79, they extensively argue this language to the board. And then the only time the board discusses it anywhere is in a footnote where it kind of blows it off as new matter. This was a major argument made by the appellant below. In fact, it was first. The argument that comes after it is their, they actually say, our second argument. So their first argument is this language. The board discusses it nowhere in the opinion except in a dismissive appearing fashion because it's new matter. I mean, my view is, it's not that they deserve to win and deserve to get a patent. They do deserve to have their arguments squarely and clearly addressed. And you would have me look back several pages earlier where they have some blanket statement about adopting things by the examiner as being a sufficient resolution of this issue that occupied most of the pages of their brief and they designated as their first and primary argument. I would also have you look to the context. Like I said, they did address it. They said, appellant argues this. They do quote that language. They acknowledge that language and they say that they disagree. And then in their analysis, they do say that they looked at both specifications and in their analysis, they give their reasons. They say set wasn't used, subset wasn't used. And even that language that is pointed to doesn't use set. All it says is that a special lock may be of different kinds. But when they say we disagree, they then go on and say in that same paragraph, when they say we disagree with this, they say our review of the present specification and the prior one shows no description of a set of locks and that's in that same paragraph is this footnote that says, and this stuff is new matter. So why should I view the we disagree with appellant language as necessarily concluding that this language doesn't support them since that very same paragraph, the explanation of why they disagree includes a statement that this stuff is all new matter. So why should I attribute to them a substantive review of the language and determination that it nonetheless doesn't support, provide written description support, when the only particular statement they made about the language is that it was new matter? We think the board was also conducting a priority analysis because the priority analysis was relevant to the 103 rejection, which the board ultimately didn't uphold because of this set limitation. The board found that. So you think I should read this footnote despite the fact that it's contained within the paragraph, which by your own admission is supposedly addressing whether or not the any special lock of this type language does or does not provide written description support. You think I should nonetheless read that footnote divorced from any discussion of priority or resolution of a priority issue under 103 to nonetheless somehow be a statement about the 103 issue not contained in this section of the board's opinion and irrelevant to the written description analysis? Is that the argument you just made? I agree with you that the footnote... Is that the argument you just made? You said a lot. I'm not sure that I... Did you just tell me that I should construe footnote 2 as being relevant to the 103 priority analysis that the board may have been undertaking elsewhere in the opinion? Yes, that's my understanding. Even though the board has labels on each of the things. We're under the 112 rejection label. Right. Followed on page 9 is the 103 rejection. Right. So are you suggesting this is just some sort of editorial problem? They put the footnote in the wrong place? I think the board was undertaking priority analysis and that's what was being argued to them. That's what the prosecution focused on. Under the 103 rejection issue, which the board explicitly takes up under a different subject. Right, but the priority analysis for the 103 is the same. I mean, you're still looking to whether this language is in the spec. You're just kind of looking at which spec it's to. And I do agree that this footnote, I would rather it not be there. I don't understand exactly why the board included it, but I think... Well, going back to Judge Moore's earlier question, which is, is it not a plausible or reasonable interpretation to read this footnote as saying the board didn't consider it? Is that unreasonable? I think the reason why I find that to be unreasonable is because the board said multiple times that they were looking at the present specification. They said, our review of the present specification... Okay, so do you find it reasonable to suggest we don't know what on earth the board was doing because there was an inconsistency between what it said? I think we have many indications. The adoption of the examiner, the fact that they cited that language to appellant and responded to it, the fact that they, at least in two places, said that they were looking at the current specification. I think if you put that on one side and then you put this footnote, which doesn't say that they didn't look at that material. They just noted that footmaterial was new matter. I think if you weigh those out... When you call something new matter, do you then consider it for written description? You do in this context. In the 112 context, you do. I don't know. You just admitted that you have no idea why this footnote is here, and I'm glad that you did because it was honest, and I appreciate that because I can't imagine what you could say otherwise. So my view of this is, I don't know why this footnote is here either, and I understand, and I think that you're making really legitimate arguments about the rest of the opinion, but what bothers me is that we're all here today because the board did include a confusing and sloppily written opinion, include this footnote, and I kind of don't think it's fair to them because they had to shell out a bunch of money to appeal to us, nor is it fair to me because I had to spend a lot of time on this case to save the board from its own sloppy opinion writing. You stand here today and cannot explain to me what else this footnote could possibly mean or why it's there. So I don't know what to do with that other than to vote in favor of vacating, not reversing, of course, but vacating and saying to the board, you need to write an opinion that is reviewable under Chenery standards and that isn't confusing and doesn't cause a lot of people, all of us here in this room, to spend time and money trying to figure out what you meant or what you actually did decide and not decide. So I think you know where I am. There's no question. Does the nowhere sentence tell us anything about what's happening? If you look at the, it's on appendix eight, page seven of the decision, the sentence doesn't make any sense. Nowhere in the, in the. Something's left out. Can you tell me what was left out? Nowhere in, in Washington, D.C., nowhere in California. I will, I will assume. It's a nowhere sentence. So does that tell me anything about where the board had its attention focused? I mean, I assume that's just a typo of. Yeah, but there has to be, you would think it was somebody started typing nowhere in the, did they mean to say that twice or did they mean to say nowhere in the father application? In the present specification or in the grandfather? That, that could be possibly what they meant. You know, I think that the concept that they were presenting, I mean, the overall opinion of the board, reading the board's description, this decision, I think you come away with a. So it suggests that the board's decision wasn't proofread, which might also suggest that no one really thought about where the proper placement for footnote two should be. That's fair enough. If only there were a way the board could explain this. If there are no further questions, I'll yield the rest of my time. I'll give you two minutes. Thank you, Your Honor, and I believe I'm largely out of time, so I'll just say I think the court understands our position that there was critical language in the specification. It was argued extensively below. The board didn't address it. There's a footnote that we understand to say that they disregarded it entirely and they certainly made no factual findings about that material whatsoever. We think that is a basis for this court to remand for the board to actually do its job and explain its reasoning in the first instance. Thank you.